### In re WILLIAMS COMPANIES ERISA LITIGATION.

No. 02–CV–153TCKFHM, 02–CV–159HM, 02–CV–285–HM, 02–CV–289–HC.

United States District Court, N.D. Oklahoma.

Aug. 22, 2005.

Lynn Lincoln Sarko, Laurie B. Ashton, Gary A. Gotto, T. David Copley, Cari Campen Laufenberg, Keller Rohrback, L.L.P., Seattle, WA, Marc I. Machiz, Bruce Rinaldi, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, D.C., John E. Dowdell, William W. O'Connor, Norman, Wohlgemuth, Chandler & Dowdell, Tulsa, OK, for ERISA Plaintiffs.

Paul J. Ondrasik, Jr., Michael Kail, Matthew Kepniss, Steptoe and Johnson, Washington, D.C., for Defendants Keith Bailey, Jack D. McCarthy, Michael Johnson, Travis N. Campbell, Nick Bacile, John Bumgarner, Travis Campbell, R. Rand Clark, James Ivey, Howard Kalika, Marcia MacLeod, Ron Mucci, Scott Welch, Mark Wilson, Phillip D. Wright, Dan M. Miller, Lewis A. Posekany, Jr., Rick Rodekohr, and Andrew Sunderman.

Howard Shapiro, Charles F. Seemann, III, Yolanda Montgomery, Proskauer Rose, LLP, Boca Raton, FL, for Defendants The Williams Companies, Inc., Hugh M. Chapman, Thomas H. Cruikshank, William E. Green, W.R. Howell, James C. Lewis, Charles M. Lillis, George A. Lorch, Frank T. MacInnis, Steven J. Malcolm, Gordon R. Parker, Janice D. Stoney, Joseph H. Williams, and Ira D. Hall.

### *ORDER*

KERN, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Class Certification (Docket No. 57).[1] The Court has carefully

---

1. This case was originally assigned to Judge Sven Erik Holmes. It was transferred to the under- signed on March 16, 2005. Judge Holmes held a hearing on the motion for class certification on

considered the Plaintiffs' motion, the response and reply thereto, and the supplemental authorities provided by both Plaintiffs and Defendants. After careful review, the Court finds that the Plaintiffs have satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, and that certifying the class at this time will facilitate a fair and efficient resolution of this case.

## I. Introduction

Plaintiffs are former employees of the Williams Companies, Inc. ("Williams" or the "Company") who invested in the company retirement savings plan. They brought this action alleging that Defendants breached certain fiduciary duties owed to Plaintiffs under the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs seek to litigate these claims on a class-wide basis. The Court summarized the Williams Companies Inc. Investment Plus Plan (the "Plan") in its Order (Docket No. 120) on the motions to dismiss the Consolidated Amended Complaint ("CAC"), entered on July 14, 2003.[2] The following is an abbreviated version of the facts that are pertinent to the motion for class certification.

### A. The Plan

The Plan is an individual account plan within the meaning of ERISA. *See* ERISA § 3(34), 29 U.S.C. § 1002(34). Each participant in the Plan has an individual account, and his or her plan benefit is based solely on the value of that account. The Plan is also an "employee pension benefit plan" under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and has both an employee and employer contribution feature. The former feature permits, but does not require, employees to invest a portion of their salary in any of a variety of options, including Williams stock.[3] As the Plan is a 401(k) plan, Williams made voluntary employer matching contributions, as well as employer bonus contributions, throughout the class period.[4] The Plan was designed so that the Company's match and BESOP contributions were initially made in Williams stock; however, the Plan provided that participants could diversify out of their match and BESOP accounts when their employment was terminated or upon reaching a designated age. Plaintiffs allege that as of December 31, 2001, about $929 million of $1.355 billion, or approximately 69% of the assets of the Plan, were in Company stock.

According to the terms of the Plan, the employee-participants had responsibility for deciding how their contributions would be invested. To aid participants in making their decisions, the Plan's Summary Plan Description ("SPD") set forth certain information concerning each fund, including the respective level of risk. While the Plan was described to participants as a "404(c)" plan, the parties disagree about whether the Plan actually met the requirements of ERISA § 404(c).

### B. Claims

Plaintiffs allege that the Board of Directors, the Benefits Committee, the Invest-

---

August 7, 2003. The Court has thoroughly reviewed the transcript of that hearing and has considered the arguments set forth therein, along with the papers filed by the parties, in reaching its decision.

2. Plaintiffs' motion for class certification was originally based on the Consolidated Amended Complaint (the "CAC") (Docket No. 55), filed December 12, 2002. The CAC has been amended twice. The Court, in the order (Docket No. 120) entered on July 14, 2003, dismissed plaintiffs' claims against the Director Defendants. Plaintiffs filed a Second Amended Complaint (Docket No. 247) on June 15, 2004, alleging new claims against the Director Defendants. On April 26, 2005, plaintiffs filed the Third Amended Complaint (Docket No. 384), which added Travis N. Campbell as a Benefits Committee Defendant, added a paragraph to existing Count Three, and

added Counts Nine and Ten against the Williams Companies as a *de facto* fiduciary under ERISA. While the Court recognizes that the arguments made in the motion for class certification and the response and reply thereto are based on the CAC, the Court finds that it can properly evaluate the motion as it relates to the Third Amended Complaint, because the substantive issues identified by plaintiffs in the CAC remain essentially the same.

3. The Plan explicitly includes "Common Stock of the Williams Companies" as an investment option and permits *all* Plan assets to be invested in Williams stock.

4. The employer bonus contributions are made under the Plan's Bonus Employee Stock Ownership Plan, or "BESOP."

ment Committee, and the Company itself as a *de facto* fiduciary violated various fiduciary duties with respect to the administration and management of the Plan. Plaintiffs' claims are essentially as follows:

1. In Count One, Plaintiffs allege that the Benefits Committee Defendants and the Investment Committee Defendants breached their fiduciary duties to disclose and inform by failing: (1) to convey complete and accurate information that was material to the circumstances of investors; (2) to impart material information to Plan participants; and (3) to correct material misrepresentations made to the market.

2. In Count Three,[5] Plaintiffs allege that the Benefits Committee Defendants and the Investment Committee Defendants breached their fiduciary duties to eliminate inappropriate investment options by failing: (1) to conduct an independent investigation into all investment options; (2) to continually monitor all investment options; and (3) to diversify as required under ERISA § 404(a)(1).

3. In Count Five, Plaintiffs allege that the Benefits Committee Defendants and the Investment Committee Defendants breached their fiduciary duty to avoid conflicts of interest and/or to resolve such conflicts when they occur with regard to the Plan's holding of employer stock.

4. In Count Eight, Plaintiffs allege that the Director Defendants breached their fiduciary duty to properly appoint Benefits Committee members.

5. In Count Nine, Plaintiffs allege that Williams as a *de facto* fiduciary breached its duty to prudently manage Plan assets by failing to properly screen and choose the Plan's investment options.

6. In Count Ten, Plaintiffs allege that Williams as a *de facto* fiduciary breached its duty to disclose and inform by permitting correspondence with Plan participants to contain material omissions, which caused participants to continue to direct the purchase and holding of investments in WMB and WCG stock, although such investments were not prudent.

The claims in Counts One, Three, Five, and Eight are premised on Defendants' alleged violations of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), and are brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).[6]

## C. The Plaintiffs

Plaintiffs are current and former participants and beneficiaries of the Plan within the meaning of ERISA § 3(7) and (8), 29 U.S.C. § 1002(7) and (8). Ms. Karen Raider, a resident of Owensboro, Kentucky, is a current Plan participant. She has been a Plan participant since February, 1987. She stopped working for Williams in 2001. Ms. Raider held Company stock in the Plan through Williams' match and bonus program. (*Complaint* ¶ 21.) Ms. Kristine Zeigler, a resident of Chicago, Illinois, was a participant in the Plan from March, 1996 through November, 2001. She held Company stock in the Plan through her salary deferrals, Williams' match, and Williams' bonus program. She "cashed out" of the Plan in 2001, rolling her Plan holdings over to another tax-favored account. (*Id.* ¶ 20.) Mr. Michael Van Sickle, a resident of North Pole, Alaska, was a participant in the Plan from December 1988 to December 2001. He held Company stock in the Plan through his salary deferrals, Williams' match, and Williams' bonus program. He "cashed out" of the Plan in 2001, rolling his Plan holdings over to another tax-favored account. (*Id.* ¶ 22.)

---

**5.** Counts Two, Four, Six, and Seven have been intentionally left blank by Plaintiffs.

**6.** Count VII of the CAC was also pled, in the alternative, under ERISA § 502(a)(3). Count VII alleged that Williams was liable to the Plan for equitable relief for knowingly participating in the breaches committed by other fiduciaries, even if Williams was not found to be a fiduciary with respect to the Plan. This Count most closely resembles Counts Nine and Ten of the Third Amended Complaint.

As addressed more fully below, Defendants allege that at least 2,000 former Williams employees and potential class members executed releases upon leaving the Company. None of the potential lead plaintiffs listed above executed such a release. Should the Court find that former employees who executed releases should be included in the class, and that such former employees must be represented by a named plaintiff who executed a release, Plaintiffs have offered to provide a lead plaintiff who did execute a release.

## II. Class Certification

Plaintiffs' motion seeks certification of a class defined as: "All persons who were participants in or beneficiaries of the Williams Companies, Inc. Investment Plus Plan at any time from July 24, 2000 through December 12, 2002."

To obtain class certification, Plaintiffs must satisfy all four requirements of Rule 23(a). *See, e.g., J.B. v. Valdez*, 186 F.3d 1280, 1287–88 (10th Cir.1999). Once that threshold requirement has been met, Plaintiffs must then show that the proposed class may be certified under at least one of the provisions of Rule 23(b). *Id.* While the Court must conduct a rigorous review under Rule 23(a), *id.*, "[d]oubts should be resolved in favor of class certification." *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D.Pa.2000). The merits of the case are not pertinent for purposes of class certification. *Shook v. El Paso County*, 386 F.3d 963 (10th Cir.2004); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). For purposes of this motion, the Court accepts the substantive allegations of the Complaint as true. *J.B.*, 186 F.3d. at 1290 n. 7. However, the court need not blindly accept as true conclusory allegations which parrot the requirements of Rule 23. *Id.* It is proper, therefore, for the Court to "probe behind the pleadings" to determine whether common questions represent a significant aspect of the case and can be resolved for all class members in a single adjudication. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

## A. Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These elements have commonly been identified as numerosity, commonality, typicality, and adequate representation. The Court will address each element in turn.

### 1. Numerosity

To obtain class certification, Plaintiffs must show that "the class is so numerous that joinder of all members is impractical." Fed. R.Civ.P. 23(a)(1). In the instant case, Defendants do not challenge the proposed class on this point. It is undisputed that the class here numbers more than 15,000 people. The Court finds that a class of this size is sufficiently large to render joinder of all parties impracticable under Rule 23(a)(1). *See, e.g., Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270 (10th Cir.1977) (class of forty-six plaintiffs large enough to warrant class certification). Thus, the requirement of Rule 23(a)(1) is satisfied.

### 2. Commonality

To certify a class, the Court next must find that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "The commonality requirement is usually easily met, as it requires only that the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Ikon Office Solutions*, 191 F.R.D. at 463 (internal quotation omitted). Plaintiffs have identified the following issues as questions of law or fact that are common to the class:

1. Who are the Plan fiduciaries and what are their duties?

2. Did Defendants have a duty to eliminate company stock as a retirement investment option?

3. Did the Benefits Committee provide necessary information to Plan participants?

4. What, if any information did Defendants fail to disclose, and was that information material?

5. If Defendants failed to disclose material information, when should such information have been disclosed?

6. Is ERISA 404(c) applicable to the Plan in question?

7. Did Defendants have divided loyalties in violation off any fiduciary duty?

8. Did Defendants act in the best interests of Plan participants?

9. Were Defendants required to engage an independent fiduciary?

Despite the identification of the above common questions, Defendants raise two arguments with regard to Plaintiffs' ability to establish commonality.

First, Defendants argue that Plaintiffs have failed to establish commonality because, under ERISA § 404(c) "any loss to any individual participant in a 401(k) plan was the result of the exercise of independent control over the participant's own account," (Def.'s Mem. in Opp. to Pls.' Mot. for Class Certification at 7.), and therefore each claim will require an independent analysis. Second, Defendants argue that Plaintiffs assert misrepresentation claims, which will require each Plan participant to offer individualized proof of reliance, thereby defeating commonality.[7]

With regard to Defendants' first argument, the Court first notes that whether the Plan falls under § 404(c) is subject to disagreement between the parties, and that issue is not properly before the Court at this time. Moreover, with regard to both of Defendants' arguments, the Court finds that, regardless of the presence of some individualized issues, Plaintiffs have still established that this case presents some common issues of fact or law.

In *Ikon Office Solutions, supra,* the court found that commonality was established in a case similar to the one now before the Court. In that case, the plaintiffs claimed that their employer breached certain fiduciary duties with respect to the company ERISA employee stock ownership plan, and sought to certify a class composed of all plan participants. The defendants argued, in part, that the plaintiffs had failed to establish commonality "because the decision as to whether to hold or transfer stock is profoundly individualized." *Ikon Office Solutions,* 191 F.R.D. at 463. The court held that "[w]hile the decisions as to whether to hold Ikon stock may ultimately be individualized, only one common issue of law or fact must exist to satisfy the commonality requirement of Rule 23. In this case, common questions include whether the defendants acted as fiduciaries, what communications they made to plan participants and beneficiaries, and whether those communications contained material misrepresentations." *Id.* at 464.

Similarly, in the instant case, there may be some individualized issues, particularly if the Plan is found to constitute a 404(c) plan. *See, e.g. Wiseman v. First Citizens Bank & Trust Co.,* 212 F.R.D. 482 (W.D.N.C.2003). However, as stated above, commonality requires that there be only one common issue of law or fact. Here, multiple common issues exist, including but not limited to: whether Defendants acted as fiduciaries; what duties, if any, were violated by Defendants with respect to the Plan; and whether Defendants improperly withheld information from Plan

---

**7.** In this regard, Defendants acknowledge that Plaintiffs' breach of fiduciary duty claims are based on failures to disclose relevant information, rather than on affirmative misrepresentations allegedly made by Defendants. (*See* Def.'s Mem. in Opp. to Pls.' Mot. for Class Certification at 9.) However, Defendants argue that Plaintiffs can be expected to assert affirmative misrepresentation claims, because during depositions Plaintiffs testified that they relied on statements made by Defendants to make poor investment decisions. In this regard, the Court simply notes that Plaintiffs are the masters of their claims, and that Defendants cannot properly base their arguments on claims that they believe Plaintiffs might someday allege. Moreover, as set forth below, the Court finds that, even if some individualized issues exist, there are still common questions of law or fact to satisfy the commonality requirement of Rule 23(a)(2).

participants. These issues will be present even if the Plan is found to be a 404(c) plan, or if Plaintiffs add claims based on affirmative misrepresentations. As was true in the *Ikon* case, "[d]efendants' position also ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." *Ikon Office Solutions,* 191 F.R.D. at 465. Based on the above, the Court finds that Plaintiffs have satisfied the commonality requirement set forth in Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that proposed class representatives present claims typical of other class members—in other words, class representatives should have the same interests and seek a remedy for the same injuries as other class members. *See, e.g. East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). However, there is no requirement that the circumstances of the named plaintiffs and the potential class be identical. *Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983) ("Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist."). As long as the class representatives' claims are not "significantly antagonistic" to the class, typicality is established. *Heartland Communications, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 116 (D.Kan.1995).

The claims of proposed class representatives Zeigler, Raider and Van Sickle are based on the same legal theory and same course of conduct as the claims of other class members seeking relief under ERISA § 502(a)(2). *Ikon Office Solutions, Inc.,* 191 F.R.D. at 465–66 ("the named plaintiffs and the putative class would necessarily allege a similar course of conduct: that Ikon and the individual defendants failed to provide accurate information in violation of ERISA obligations. . . . [D]efendants argue that [the class representatives] are subject to the unique defense that they held their stock even following their awareness of fraudulent activity and the ultimate disclosure of Ikon's

charge to earnings. . . . [T]he court agrees with plaintiffs that this point does not cast doubt upon the typicality of [the class representatives.] The focus of this inquiry is whether the named representatives rely on a similar legal theory as will the putative class, not whether the parties behaved identically in response to the alleged breaches of fiduciary duty.").

Plaintiffs and the class assert a claim for plan-wide relief under ERISA § 502(a)(2), which is by definition a representative action on behalf of the plan as a whole. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). This claim may be asserted by any plan participant or beneficiary, the Secretary of Labor, or any plan fiduciary. *See* ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). In the instant case, Ms. Raider is a current Plan participant, with undisputed standing to seek plan-wide relief.

■ Defendants argue that Ms. Zeigler and Mr. Van Sickle, as former Plan participants who received lump-sum rollover distributions upon leaving Williams, lack standing to bring this action and therefore fail to meet the typicality requirement of 23(a)(3). The Court disagrees. Ms. Zeigler and Mr. Van Sickle allege that, but for the alleged violations of ERISA, their account balances would have been larger at the time they took their distributions. Since any recovery from the Plan should be allocated to the accounts of affected participants, including those like Ziegler and Van Sickle who have taken a distribution from the Plan, these Plaintiffs and others similarly situated retain a "colorable claim to benefits" sufficient to confer on them standing to sue under 502(a)(2) and (3) as participants. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 350 (5th Cir.1989); *see also Coan v. Kaufman,* 333 F.Supp.2d 14, 20 (D.Conn.2004); *Gray v. Briggs,* 1998 WL 386177 (S.D.N.Y. July 7, 1998) ("Where as here, the plaintiffs allege that the distributions they received were less than they were entitled to on account of the defendants' wrongful conduct during the term of the plaintiffs' employment, the plaintiffs' claim is for 'vested benefits.' In other words, the

plaintiffs seek benefits to which they were entitled at or before the time of their termination, but which they did not receive because of the defendants' wrongdoing.").

■ Defendants next argue that Ms. Zeigler, Ms. Raider and Mr. Van Sickle are not typical of their fellow class members because none of them signed a severance agreement or release upon leaving Williams, whereas approximately 10% of the class did sign such a severance agreement or release. First, the Court notes that the claims here are brought on behalf of the Plan, and a participant cannot release the Plan's claims, as a matter of law. *Bowles v. Reade,* 198 F.3d 752, 759–61 (9th Cir.1999).[8] Second, the Court notes that aforementioned proposed class representatives are typical of the vast majority of the class, who did not sign releases. Thus, the cases cited by Defendants, in which a few plaintiffs who did not releases attempt to represent a large class of employees who did sign releases, do not persuade the Court that a class should not be certified at in all in this case.[9] *See, e.g. Swoope v. BellSouth Telecommunications, Inc.,* 1998 WL 433952. Rather, the question the Court must answer is whether the proposed named plaintiffs can represent the potential class members who did sign releases, and whether those who did sign releases should be included in the class at all.

With regard to this issue, the Court finds persuasive the reasoning set forth in *Korn v. Franchard Corp.,* 456 F.2d 1206, 1210 (2nd Cir.1972), where the court was faced with a similar issue:

> The releases are, indeed, troublesome, but we do not consider them disqualifying *in toto.* The size of the ultimate class will depend on whether they are valid; plaintiff insists they are not while defendants staunchly uphold them. That is, of course, an issue which has not yet been litigated and which is not before us . . .

*Id.* In the instant case, while the releases are a somewhat troublesome issue, the Court does not consider them disqualifying to class certification. The issue of the validity of the releases is not before the Court at this time, and the parties are free to litigate that issue, and to request the decertification of class members who signed releases (if such an action is deemed appropriate) in the future. In this regard, the court notes that the Supreme Court has held that "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Thus, the Court finds that the employees who did sign releases should be included in the class at this time.

Defendants also argue that because none of the named plaintiffs signed a release, they have no standing to attack the validity of the releases for putative class members who did sign them. *See Bernard v. Gulf Oil Corp.,* 841 F.2d 547, 550–51 (5th Cir.1988) (plaintiffs who did not sign releases lacked standing to represent employees who did sign, because "class representatives must 'possess the same interest and suffer the same injury' as the class members, . . . a plaintiff lacks standing to litigate injurious conduct to which he was not subjected."); *Swoope v. BellSouth Telecommunications, Inc.,* 1998 WL 433952, at *5 (N.D.Miss. June 23, 1998) ("None of the named plaintiffs signed a release. Therefore, they lack standing to assert that the releases are invalid.").

To remedy this potential problem, Plaintiffs have offered to include a class representative who did sign a release to represent the class members who signed releases. The Court finds that this is an appropriate solution, and that Plaintiffs should provide a class member to represent class members

---

8. This is contrast to cases in which ERISA plan participants seek individual benefits.

9. Even if the validity of releases is an issue for some class members and not others, there is no reason to conclude that this issue will overwhelm the litigation. *McAdams v. Massachusetts Mut. Life. Ins. Co.,* No. 99–30284, 2002 WL 1067449, at *5 (D.Mass. May 15, 2002) (determining the validity of release would not overwhelm litigation). The Court also notes that, in the instant case, even if all 2,000 of the employees who signed releases are excluded from the class, the class would still easily satisfy the numerosity requirement of Rule 23(a)(1).

who did sign releases, in order to remedy any potential standing problem.

Subject to the above qualification regarding the appointment of a class representative who has signed a release, the Court finds that the named class representatives rely on a similar legal theory as will the putative class, and therefore typicality has been established under Rule 23(a)(3).

### 4. Adequate Representation

■ Rule 23(a)(4) requires that the proposed class representatives fairly and adequately protect the interests of the class they wish to represent. There are two prongs to this requirement: (i) the class representatives must have common interests with the class members; and (ii) the class representatives must vigorously prosecute the interests of the class through qualified counsel. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The first prong largely overlaps with the commonality and typicality requirements of Rule 23(a), and focuses on "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Schatzman v. Talley*, 91 F.R.D. 270, 273 (N.D.Ga.1981) (citation omitted). The second prong is generally addressed to the qualifications of counsel.

With regard to the first prong, the Court has considered the parties' arguments and finds that no conflicts of interest exist between the proposed class representatives and absent class members. Defendants argue that the named plaintiffs' lack of interest in litigating the release issue, discussed above, also defeats the adequacy requirement of Rule 23(a)(4). The Court finds that this issue, like the typicality issue, can be remedied by the inclusion of a class representative who did sign a release.

With regard to the second prong, there is no question that Plaintiffs' counsel is well-qualified to qualified to represent Plaintiffs in the present ERISA class action litigation.

In the instant case, the Court finds that the proposed class representatives' interests are aligned with the class and they have retained qualified counsel with extensive experience in representing plaintiffs in ERISA class litigation. Accordingly, the court finds that the Plaintiffs have satisfied the requirements of Rule 23(a)(4).

### B. Rule 23(b)

■ As set forth above, once Plaintiffs have met the threshold requirements of Rule 23(a), they must then show that the proposed class may be certified under at least one of the provisions of Rule 23(b). In the instant case, Plaintiffs argue that class certification is proper under Rule 23(b)(1), or, in the alternative, under Rule 23(b)(2).

### 1. Rule 23(b)(1)

Under Rule 23(b)(1), a class may be certified if:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Fed.R.Civ.P. 23(b)(1). Thus, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *Ikon Office Solutions*, 191 F.R.D. at 466. "Certification under either of these subsections constitutes a mandatory class." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D.Pa.2001).

In the instant case, Plaintiffs' claims are particularly well suited for Rule 23(b)(1) certification by virtue of the substantive law of ERISA. As one court explained:

The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plain-

tiffs without relief.... There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether [defendant] had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

*Ikon Office Solutions, Inc.,* 191 at 466 (citation omitted). The Court finds that due to ERISA's distinctive "representative capacity" and remedial provisions, class treatment under Rule 23(b)(1)(B) is appropriate in this case. Moreover, certification would also be proper under Rule 23(b)(1)(A). As the Court noted in Bunnion:

> We find that the ERISA [claims for breach of fiduciary duties, among others] are appropriate for certification under both [23(b)(1)(A) and (b)(1)(B) ]. All of these claims relate to the interpretation and application of ERISA plans. [Defendant] treated the proposed class and subclass identically and any equitable relief granted will affect the entire class and subclass. Failure to certify a class would leave future plaintiffs without adequate representation. Moreover, we see a high likelihood of similar lawsuits against defendants should this class be denied.... Inconsistent judgments concerning how the Plans should have been interpreted or applied would result in prejudice.

*Bunnion v. Consolidated Rail Corp.,* 1998 WL 372644 at *13 (E.D.Pa. May 14, 1998). *See also SmithKline Beecham,* 201 F.R.D. at 397 (granting class certification under subsection (b)(1)(A); "the plaintiffs seek broad declaratory and injunctive relief related to defendants' conduct and the terms of the plan. If this relief were granted in some actions but denied in others, the conflicting declaratory and injunctive relief could make compliance impossible for defendants").

Based on the above, the Court finds that class certification is appropriate as to all claims in the instant case under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B). Accordingly, the class will be certified under both provisions.

In the alternative, the Court finds that the class may be properly certified under Rule 23(b)(2). That provision states that a class may be certified if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

Fed.R.Civ.P. 23(b)(2).

Here, Plaintiffs' claims are all based on conduct by Defendants that is generally applicable on a class-wide basis. Plaintiffs allege that Defendants breached their fiduciary duties to the class through conduct that affected all Plan participants and beneficiaries. Moreover, if Plaintiffs prove that Defendants breached their fiduciary duties in the manner alleged, Defendants will be forced to make the Plan whole and take whatever other equitable actions are ordered by the Court. ERISA § 502(a)(2)-(3), 29 U.S.C. § 1132(a)(2)-(3); ERISA § 409(a), 29 U.S.C. § 1109(a). The remedies requested by Plaintiffs are by definition plan-wide. *See, e.g., Bona v. Barasch,* No. 01–Civ.–2289, 2003 WL 1395932, at *9 (S.D.N.Y. March 20, 2003). If Plaintiffs prevail and the Plan recoups its losses through the declaratory and injunctive relief sought by Plaintiffs, any consequential financial benefit to individual participants and beneficiaries would flow directly and incidentally from the Plan's recovery. *See Bublitz v. E.I. du Pont de Nemours & Co.,* 202 F.R.D. 251, 259 (S.D.Iowa 2001).

Based on the above, the Court finds that class certification of all claims in the instant case is also warranted under Rule 23(b)(2), and the class shall be certified under that provision.

### III. Conclusion

Plaintiffs' Motion for Class Certification (Docket No. 57) is hereby GRANTED IN PART AND DENIED IN PART. The Court hereby certifies a class pursuant to Federal Rule of Civil Procedure 23(b)(1)(A), 23(b)(1)(B), and 23(B)(2) defined as: all persons who were participants in or beneficiaries of the Williams Companies, Inc. Invest-

ment Plus Plan at any time from July 24, 2000 through December 12, 2002.

The Court hereby appoints Kristine Zeigler, Karen Raider, and Michael VanSickle as Class representatives. Plaintiffs are hereby ordered to submit a class representative to represent the class members who signed a release, as set forth above, no later than 15 days from the entry of this Order.