REAVLEY, Circuit Judge,
dissenting:
I would affirm the order certifying the class action. The majority decides that plaintiffs must return to the district court for further pondering of whether Title 29 U.S.C. § 1104(c)(1) relieves the fiduciary of liability, that certification under Rule 23(b)(2) would be inappropriate because of conflict between members of the class, and that Rule 23(b)(1) is “conceptually unclear.” As I understand the opinion, it misapplies § 1104(c)(1), reflects an incorrect view of conflict, and ignores the unique applicability of Rule 23(b)(1) in this case.
A. Control Over Assets
EDS employees could choose among a dozen or more options, including an EDS stock fund, for investment of their plan contributions. Matching plan contributions made by the company on the employees’ behalf were mandatorily invested in the EDS stock fund, where they were required to remain for two years. In this suit, the employees who selected the EDS stock fund sue for fiduciary imprudence in affording them that option, but the majority holds that the statute and regulations count the employee selection of the EDS option to be control of assets that absolves the fiduciary of liability.
Title 29 § 1104(c)(1) (also ERISA § 404(c)[1]) provides in relevant part that “[i]n the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account [then] no person who is otherwise a fiduciary shall be liable [ ] for any loss, or by reason of any breach, which results from such participant’s or beneficiary’s exercise of control.” The statute further provides that the circumstances in which a participant or beneficiary is considered to have exercised independent control over assets in his account as contemplated by § 404(c) are to be determined under regulations of the Secretary of the Department of Labor (“DOL”). Id. at (c)(1). The agency’s regulations describing those circumstances, and the consequences of a participant’s or beneficiary’s exercise of control are set forth at 29 C.F.R. § 2550.404c-l. Under these regulations, in order to qualify for relief from fiduciary liability, plans must meet certain general requirements, including provision of sufficient investment information and disclosure of material facts. 29 C.F.R. §§ 2550.404c-l(b)(2)(B), (e)(2)(ii) (2004). The EDS plan’s full compliance with these requirements is, at this stage, undetermined.
For present purposes, we need not consider questions about what information the law requires a fiduciary to give participants about investments in a selected stock option, but I would hold that imprudent designation of an option for participants to choose constitutes grounds for fiduciary liability, and falls outside the scope of participant control envisaged by § 404(c). That is the position of the Department of Labor, of the commentators, and of the case law.
The DOL regulation provides that a plan fiduciary will not be liable for any loss that “is the direct and necessary result of [a] *320 participant’s or beneficiary’s exercise of control.” 29 C.F.R. § 2550.404c-l(d)(2)(i)(2004). The DOL has made clear that § 404(c) does not relieve fiduciaries of their prudence duty in selecting and monitoring plan investment options. See Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 4.04(c) Plans), 57 Fed.Reg. 46906-01, 1992 WL 277875 (Oct. 13, 1992). (General preamble, n. 27) (“[T]he Department points out that the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan.”) (emphasis added). The DOL has consistently reiterated this interpretation.[2]
An agency’s reasonable interpretation of its own regulation is entitled to the highest deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[3] The majority says the DOL’s preamble is entitled to deference only to the extent it has power to persuade, citing Louisiana Environmental Action Network v. EPA, 382 F.3d 575 (5th Cir.2004), where we held that an interpretation set forth in the preamble of a proposed regulation, which had not yet been subjected to formal notice-and-comment rulemaking, was entitled to less than Chevron, deference. Id. at 583. But here the statute expressly delegated to the agency the task of promulgating a regulation governing when a participant will be viewed as having exercised independent control over the assets in his or her account for the purposes of § 404(c) relief from fiduciary liability. See 29 U.S.C. § 1104(c)(1).
The DOL’s interpretation, as quoted above, was contained in the preamble to a revised version of the proposed § 404(c) regulation, which was promulgated and noticed in March 1991. See Participant Directed Individual Account Plans, 56 Fed. Reg. 10724-01, 1991 WL 301434 (Mar. 31, 1991). This version of the regulation was the subject of further comment, and the final regulation, containing the same interpretative passage in the preamble, was adopted in October 1992. See Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans), 57 Fed.Reg. 46906-01, 1992 WL 277875 (Oct. 13, 1992). The DOL’s interpretation of the final notice-and-comment regulation as preserving the fiduciary’s duty to prudently select and monitor the plan investment options, which was published in the federal register and uniformly adhered to in numerous public pronouncements, is entitled to controlling weight to the extent that it is reasonable.
The DOL’s interpretation of its own § 404(c) regulation is reasonable. Section 404(e) need not be read to shield fiduciaries from liability for including an imprudent investment option on the investment menu in a self-directed plan. By allowing plans to limit their universe of investment choices and still be considered 404(c) plans, the DOL left participants and their beneficiaries at the mercy of the wisdom of *321 whoever made these limiting choices. There should be some assurance that these limited investment choices will be prudently selected. If no duty of prudence attaches to selection of investment options, plan fiduciaries could imprudently select a full menu of unsound investments, among which participants would be free to choose at their peril, while the fiduciaries remain insulated from responsibility. The DOL was within its delegated authority in deciding not to offer relief for the decision to offer a plan investment option.
All commentators recognize that § 404(c) does not shift liability for a plan fiduciary’s duty to ensure that each investment option is and continues to be a prudent one.[4] Further, the majority of courts *322 that have considered the issue have held that, even if a plan otherwise qualifies as a § 404(c) plan, the fiduciary retains the duty to prudently select and monitor investment options such that § 404(c) does not provide an absolute defense to breach claims.[5]
The majority relies heavily on the Third Circuit’s decision In re Unisys Sav. Plan Litigation, 74 F.3d 420 (3d Cir.1996), for its conclusion to the contrary. Unisys concerned events occurring before the DOL’s § 404(c) regulation became effective. Although some of the Unisys court’s conclusions regarding the scope of the authorizing ERISA statute, 29 U.S.C. § 1104(c), are similar to those contained in the § 404(c) regulation, neither that regulation nor the DOL’s interpretation were directly addressed. 74 F.3d at 444 n. 21 (“As the regulation [29 C.F.R. § 2550.404c-l] was not in effect when the transactions at issue occurred, it does not apply or guide our analysis in this case.”). As courts have recognized, Unisys and subsequent opinions that rely upon it should not be considered controlling, particularly in light of the DOL’s consistent contrary interpretation. See e.g., Difelice v. U.S. Airways, Inc., 404 F.Supp.2d 907, 909-10 (E.D.Ya.2005) (finding Unisys unpersuasive and noting that “every court to consider this issue with the benefit of the DOL regulation” had agreed with the DOL interpretation).
Holding plan fiduciaries responsible for imprudent choice of a limited set of options does not, as EDS suggests, make it a guarantor of participant investment returns. Plaintiffs allege here that EDS stock had defects beyond mere riskiness and that it was imprudent to offer it as an investment option for anyone. Whether or not plaintiffs can prove that allegation remains to be seen, but that is not before us at this stage. Of course, it cannot be disputed that § 404(c) provides no shield for the fiduciaries’ investment and mandatory two-year retention of the matching contributions in company stock, a decision guided by no participant direction whatsoever.[6]
*323 B. Intra-class Conflict
Beyond the § 404(c) dispute, I do not believe the fact that a portion of the plan participants signed general releases upon departing the company’s employ precludes class certification. I find no fault with the district court’s conclusion that these releases do not extend to the plan participants’ right to recoup plan benefits and agree that, even if this conclusion is incorrect, no individual participant can unilaterally release the rights of other participants to derivatively seek recovery on behalf of the plan under § 502(a)(2). See, e.g., Bowles v. Reade, 198 F.3d 752, 759-61 (9th Cir.1999) (rejecting the argument that settlement of a participant’s breach of fiduciary claims against a defendant released the plan’s claims against that defendant). The dispute over the breadth of the release can be resolved on a class-wide basis and, whether or not these releases preclude the relatively small percentage of signing participants from receiving allocation of any recovered plan assets, this does not deny class certification.
Further, the fact that some individual participants may gain from allocation of any recouped plan assets and some may not does not present a conflict. .All courts that have considered the issue, including this one, have rejected arguments that a § 502(a)(2) ERISA action must allege harm to all of a plan’s individual participants.[7] To hold that variances among allo *324 cation present a class conflict is a backdoor avoidance of this universal conclusion. In short, the possibility that individualized benefit determinations will be required is insufficient to bar class certification.
Further, because the plaintiffs are suing under section 502(a)(2) on behalf of the plan, it is not material whether or not individuals lost money or had access to investment information regarding EDS stock that might have prevented them from doing so. The loss causation issue is whether the defendants caused a loss to the plan (ERISA § 409(a), 29 U.S.C. § 1109(a)) by including EDS stock as a plan option, regardless of whether or not individuals like plaintiff Mizell “traded [his] way to profit,” as the majority states, by continuing to invest in allegedly imprudent employer securities. See In re Enron Corp. Sec. Derivative & “ERISA” Litig., No. MDL 1446, Civ. A. H-01-3913, 2006 WL 1662596, *3-4 (S.D.Tex. June 7, 2006); DiFelice v. U.S. Airways, Inc., 235 F.R.D. 70, 78-79, 83 (E.D.Va.2006). We have already implicitly ruled against the defendants’ argument — and the majority’s position — on this front in affirming the class in the parallel EDS securities fraud suit. See Feder v. Electronic Data Systems Corp., 429 F.3d 125, 138 (5th Cir.2005) (“We reject the argument that a proposed class representative in a fraud-on-the-market securities suit is as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company’s stock.”).
Finally, our disposition of this appeal is not affected by the fact that some participants may not agree with the request for injunctive relief in the form of removing the EDS stock fund as a plan option. While prudence will be evaluated as of the time of the alleged fiduciary breach, the value of injunctive relief will be measured as of the current status quo. That some class members may not want EDS stock removed as an investment alternative does not present a conflict. Rather, the district court will decide what is best for the plan and, accordingly, will weigh the fact that members continue to invest in and hold the company stock in that determination.
For all of these reasons, I do not see either intra-class conflicts or lack of typicality on the part of the named plaintiffs that would preclude class certification under the prerequisites of Rule 23(a).
C. The District Court’s Certification and Rule 23(b).
The majority’s primary focus on class action Rule 23(b)(2) is misplaced because certification was also ordered under Rule 23(b)(1), and that rule is particularly suited to this litigation. Rule 23(b)(1) provides that:
An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dis-positive of the interests of the other members not parties to the adjudications or substantially impair or *325 impede their ability to protect their interests.
Fed.R.Civ.P. 23(b)(1).
Although ERISA’s civil enforcement rules allow a single plaintiff to sue for plan-wide relief, much of today’s ERISA litigation is maintained on a class action basis. The fiduciary duty of prudence at issue is owed to the entire class and separate actions would create the risk of establishing inconsistent standards under ERISA. Were the individual class members each left to bring separate § 502(a)(2) actions on behalf of the plan, each case could conceivably result in different courts reaching conflicting decisions regarding not only the ultimate prudence of investment in EDS stock, but also the applicability of the various defenses the defendants seek to interpose. See In re CMS Energy ERISA Litig., 225 F.R.D. at 543 (certifying class under Rule 23(b)(1) in face of allegations similar to this case to avoid risk of inconsistent rulings concerning fiduciary status and materiality of alleged omissions where the “single overriding common issue is whether CMS stock was an imprudent investment for the Plan”). Contradictory rulings as to the appropriateness of injunc-tive relief would also place incompatible demands on the defendants.[8] In keeping with this rationale, a number of courts have certified ERISA fiduciary breach suits under Rule 23(b)(1).[9] I would follow this lead and affirm the district court’s certification order under Rule 23(b)(1).
The parties have devoted much of their extensive briefing to discussion bearing on the merits of plaintiffs’ claims. While plaintiffs may face factual obstacles on the way to proving their claim, such matters are not before us at this stage. For example, the fact that, as the majority opinion observes, EDS stock has recovered in large measure is not relevant. We have recognized that prudence is a test which measures the fiduciary’s conduct at the time of the decision, rather than the suc *326 cess or failure of his or her course of action. Metzler v. Graham, 112 F.3d 207, 209 (5th Cir.1997) (“Prudence is to be evaluated at the time of the investment without benefit of hindsight.”). Class certification is appropriate regardless of the ultimate outcome on the merits because the Rule 23 prerequisites have been met as the district court correctly determined.
It appears to me that the majority’s view of the effects of section 404(c) and the general releases, and how they affect all aspects of the class action certification, controls the matter, and I have difficulty seeing how it leaves the district court any room for certification on remand. In addition to prolonging an already over-lengthy process, the majority’s disposition presents the district court with a futile exercise.

. The majority and many writers use the ERISA § 404(c) designation and I will do so hereafter.

. See, e.g., DOL Advisory Opinion No. 98-04A, 1998 WL 326300, at *1, *3 n. 1 (May 28, 1998); DOL Advisory Letter, 1997 WL 1824017, at *2 (Nov. 26, 1997), amicus briefs in this case and in In re Enron Corp. Securities, Derivative & ERISA Litig., 284 F.Supp.2d 511 (S.D.Tex.2003) and In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231 (3d Cir.2005).

. See Auer v. Robbins, 519 U.S. 452, 457, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997); Wells Fargo Bank of Texas N.A. v. James, 321 F.3d 488, 494-95 (5th Cir.2003).

. See, e.g., 1 Michael J. Canan, Qualified Retirement Plans § 16.28 (2006 ed.) ("[T]o some degree, fiduciary liability remains for selection of the investment choices.”); Paul J. Donahue, Plan Sponsor Fiduciary Duty for the Selection of Options in Participant-Directed Defined Contribution Plans and the Choice Between Stable Value and Money Market, 39 Akron L. Rev. 9, 12 (2006) ("Selection of a [directed contribution] Plan's investment options remains a fiduciary function, and Plan Sponsors must choose those investment options knowledgeably and thoughtfully.”); 1 Ronald J. Cooke, ERISA Practice and Procedures § 6:30 (2d ed. 1996 & Supp. 2004)(‘'ERISA Section 404(c) does not relieve plan fiduciaries of the responsibility for determining whether it is appropriate to offer employer stock as an investment option under the Plan.”); Michael B. Snyder, 3 Compensation & Benefits (HR Series) § 33.138 (2006) (“Plan fiduciaries of ERISA § 404(c) plans remain responsible for ... prudently selecting and monitoring plan investment alternatives.”); Debra A. Davis, Do-it-Yourself-Retirement: Allowing Employees to Direct the Investment of Their Retirement Savings, 8 U. Pa. J. Lab. & Emp. L.-353, 377 (2006) (recognizing that plan "fiduciaries remain responsible for prudently selecting and monitoring investments” even if the plans comply with section 404(c)); David W. Powell, The Public Company ESOP in 2004, 30 J. Pension Planning & Compliance 70 (Sept. 30, 2004) ("|T]he fiduciary will remain responsible for whether it is prudent for the investment in question to be offered."); Kathleen Sheil Scheidt & David L. Wolfe, Prudence and Diversification Revisited — ERISA Section 404(c) Protection in the Wake of Enron, Emp. Benefits J. (March 2003) ("Even if a plan fully complies with ERISA Section 404(c), the plan fiduciaries retain responsibility for selecting the investment alternatives to be offered under the plan and monitoring the performance and costs of those alternatives to ensure that they remain prudent investment alternatives. This includes periodic analysis of the prudence of retaining employer stock as an investment alternative it is available under the plan.”); 1 Jeffrey D. Mamorsky, Employee Benefits Law § 12.05 (2002) ("It is important to note, however, that even if Section 404(c) applies, the mere selection of an investment alternative in a plan which limits options is a fiduciary decision and accordingly the fiduciary will remain potentially liable for the selection of the investment alternatives.”); Morton A. Harris, Working with Participant Directed Investments Under ERISA § 404(c), SG008 ALI-ABA (July 2001) (“ERISA section 404(c) does not relieve a fiduciary from liability in choosing the investment alternatives made available to participants and beneficiaries under the plan nor in determining whether or not to retain existing investment alternatives. In other words, a plan fiduciary can never avoid potential liability for negligence in picking the investments which constitute the ‘menu’ of investment alternatives made available to participants ..."); Steven J. Sacher, Employee Benefits Law 696 (2d ed.2000) (selection of investment alternatives remains a fiduciary function in a 404(c) plan); Frederick Reish and Bruce L. Ashton, ERISA Section 404(c): Shifting Fiduciary Liability in Participant-Directed Retirement Plans, Pension & Benefits Week Newsletter, Vol. 4, No. 3, January 12, 1998 ("[T]he responsibility for choosing and monitoring the investment options — as opposed to participants choosing among a preselected menu of investment options — cannot be transferred to the employees_ In selecting the investment options, the responsible fiduciary must act prudently and is liable for losses resulting from an imprudent decision .... In addition to the initial selection of the investment options, the responsible fiduciary must monitor the options to ensure that they continue to be a prudent choice for the plan.”) (internal quotation and citation omitted); RIA Pens. Analysis P 54,204 (2006) *322 ("[Fiduciaries are not relieved of other obligations in dealing with § 404(c) plans. For example, fiduciaries must continue (subject to liability for failure) to [inter alia] prudently select investment alternatives ...”).

. See, e.g., DiFelice v. U.S. Airways, Inc., 397 F.Supp.2d 758, 774-78 (E.D.Va.2005); In re Dynegy, Inc. ERISA Litig., 309 F.Supp.2d 861, 893-94 (S.D.Tex.2004); In re Enron Corp. Securities, Derivative & ERISA Litig., 284 F.Supp.2d 511, 574-79 (S.D.Tex.2003); Rankin v. Rots, 278 F.Supp.2d 853, 873 (E.D.Mich.2003); In re WorldCom, Inc. ERISA Litig., 263 F.Supp.2d 745, 763-65 (S.D.N.Y.2003); Franklin v. First Union Corp., 84 F.Supp.2d 720, 732 (E.D.Va.2000) (holding that plan fiduciaries are responsible for selecting and removing their plans' investment options when the plans comply with section 404(c)).

. I could not equate the mandatory retention as a settlor decision free of fiduciary responsibility. In this specific regard, the DOL has clearly stated that "the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan.” 57 Fed.Reg. 46,906 at 46,924 n. 27. The DOL has consistently maintained its position that plan fiduciaries have the duty to decline to follow the terms of the plan documents where those terms require them to invest participants' funds in an imprudent investment vehicle — even, and perhaps especially, where that required investment is in company stock. See, e.g., DOL Amicus Brief in Kirschbaum v. Reliant, Case No. 06-20157 (appeal pending 5th Cir.2006); DOL Op. Letter No. 90-05A, 1990 WL 172964, *3 (Mar. 29, 1990).
Indeed, we have recognized that, even in the context of ESOPs, which are designed to be primarily invested in employer securities, "ESOP fiduciaries remain subject to the gen *323 eral requirements of [s]ection 404.” Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir.1983). Those requirements include the duty to reconsider a potentially imprudent investment option, even if it is specified in the plan documents. See ERISA § 404(a)(1)(B) (requiring that plan fiduciaries exercise prudence "solely in the interest of the participants and beneficiaries”), and ERISA § 404(a)(1)(D) (stating that a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA).
Most courts to address the issue have recognized that fiduciaries for plans that hold employer stock (both ESOPs and non-ESOP plans) are therefore obligated to consider whether it continues to be prudent to invest in employer stock, and they may continue to follow plan terms requiring such investment only if prudent to do so. See, e.g., Laborers Nat’l Pension Fund v. Northern Trust Quantitative Advisors, Inc., 173 F.3d 313, 322 (5th Cir.1999); Super v. Iovenko, 66 F.3d 1447, 1457 (6th Cir.1995); Fink v. Nat’l Sav. & Trust Co., 772 F.2d 951, 954-55 (D.C.Cir.1985); Agway, Inc. Employees’ 401(k) Thrift Investment Plan v. Magnuson, No. 5:03-CV-1060, 2006 WL 2934391 at *18 (N.D.N.Y. Oct. 12, 2006); Merck & Co., Inc. Sec. Derivative & ERISA Litig., No. 05-2369, 2006 WL 2050577 at *7 (D.N.J. July 11, 2006); In re Ferro Corp. ERISA Litig., 422 F.Supp.2d 850, 859 (N.D.Ohio 2006) ("a fiduciary is not required to blindly follow the terms of a plan if doing so would be imprudent.”); In re CMS Energy ERISA Litig., 312 F.Supp.2d 898, 907-08 (E.D.Mich.2004); In re Polaroid ERISA Litig., 362 F.Supp.2d 461 473 (S.D.N.Y.2005); In re Sprint Corp. ERISA Litig., 388 F.Supp.2d 1207, 1218-25 (D.Kan.2004); In re Xcel Energy, Inc. Sec. Derivative & "ERISA” Litig., 312 F.Supp.2d 1165, 1181 (D.Minn.2004); In re WorldCom, 263 F.Supp.2d 745, 764-65 (S.D.N.Y.2003); In re Enron Corp. Sec. Derivative & “ERISA” Litig., 284 F.Supp.2d 511, 548-49 (S.D.Tex.2003); In re Ikon Office Solutions, Inc. Sec. Litig., 86 F.Supp.2d 481, 492-93 (E.D.Pa.2000); Canale v. Yegen, 789 F.Supp. 147, 154 (D.N.J. 1992); Ershick v. Greb X-Ray Co., 705 F.Supp. 1482, 1486-87 (D.Kan.1989).

. See Milofsky v. American Airlines, Inc., 442 F.3d 311, 313 (5th Cir.2006) (subset of participants not precluded from bringing breach of fiduciary duty claims under ERISA sections 502(a)(2) and 409(a) where remedy would not benefit all participants); In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231, 239-41 (3d Cir.2005) (derivative action under § 502(a)(2) was available to a subset of participants to recover losses sustained to plan by breaches of fiduciary duty); Super v. Iovenko, 66 F.3d 1447, 1452-53 (6th Cir.1995); In re CMS ERISA Litig., 225 F.R.D. 539, 543 (E.D.Mich.2004); Woods v. Southern Co., 396 F.Supp.2d 1351, 1361-62 (N.D.Ga.2005)(rejecting argument that a participant cannot be said to seek redress for losses to the plan unless every participant in the Plan was af *324 fected by the challenged breach of fiduciary duty).

. The risk of inconsistency encompasses but is not, as the majority implies, limited to injunctive considerations. Further, I do not acknowledge, as the majority states, that in-junctive relief is not at issue here, only that the appropriateness of such relief will be determined (1) as to the good of the plan (rather than the individuals), and (2) at a different point than that fixed for determination of monetary damages.

. See, e.g., In re Tyco Int'l, Ltd., No. MD-02-1335-PB, 2006 WL 2349338, *7-8 (D. New Hampshire, Aug. 15, 2006) (certifying class suing on behalf of plan under Rule 23(b)(1)(B)); In re Enron Corp. Sec. Derivative & "ERISA” Litig., No. MDL 1446, Civ. A. H-01-3913, 2006 WL 1662596, *13-15 (S.D.Tex. June 7, 2006) (certifying a class suing on behalf of a plan under Rule 23(b)(1), finding both subsections (A) and (B) applicable); Rogers v. Baxter Int’l, Inc., No. 04 C 6476, 2006 WL 794734, *11 (N.D.Ill. Mar.22, 2006) (same); Summers v. UAL Corp. ESOP Comm., 2005 WL 1323262 (N.D.I11. Feb. 17, 2005); In re Williams Companies ERISA Litig., 231 F.R.D. 416, 424-25 (N.D.Okla.2005) (same); In re ADC Telecommunications ERISA Litig., No. Civ. 03-2989ADMFLN, 2005 WL 2250782, *4-5 (D.Minn. Sept. 15, 2005) (same); Baker v. Comprehensive Employee Solutions, 227 F.R.D. 354, 360 (D.Utah 2005); Rankin v. Rots, 220 F.R.D. 511 (E.D.Mich.2004); In re WorldCom, Inc. ERISA Litig., 2004 WL 2211664 at *3 (S.D.N.Y. Oct. 4, 2004) (''[Cjertification is appropriate under Rule 23(b)(1)(B). Any adjudication with respect to individual members of the class will as a practical matter be dispositive of the interests of the other members of the class.”); In re Ikon Office Solutions, 191 F.R.D. 457, 464 (E.D.Pa.2000); Bunnion v. Consol. Rail Corp., 1998 WL 372644 (E.D.Pa.1998); Gruby v. Brady, 838 F.Supp. 820, 828 (S.D.N.Y. 1993); Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co., 140 F.R.D. 474, 479 (S.D.Ga.1991)(“Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the plan, rather than themselves, the court cannot allow absent participants or beneficiaries to opt out of this class. The right to recovery, after all, belongs to the plan.”) (citation omitted).