**In re SCHERING PLOUGH CORPORATION ERISA LITIGATION Schering Plough Defendants, Appellants**

**(Amended pursuant to the Clerk's Order dated 01/15/09).**

**No. 08–4814.**

United States Court of Appeals, Third Circuit.

Argued on Sept. 29, 2009.

Filed: Dec. 21, 2009.

Eric C. Bosset, Esq., [Argued], Covington & Burling, Washington, DC, Douglas

S. Eakeley, Esq., Lowenstein Sandler, Roseland, NJ, for Appellant Schering Plough Defendants.

Kent A. Mason, Esq., Davis & Harman, Washington, DC, for Amicus–Appellant American Benefits Council.

Katherine B. Bernstein, Esq., Edward W. Ciolko, Esq., Peter H. LeVan, Jr., Esq., [Argued], Joseph H. Meltzer, Esq., Barroway, Topaz, Kessler, Meltzer & Check, Radnor, PA, Joseph J. DePalma, Esq., Jennifer Sarnelli, Esq., Lite, DePalma, Greenberg & Rivas, Newark, NJ, Susan D. Pontoriero, Esq., Sea Girt, NJ, for Appellees Michele Wendel, Adrian Fields, Jingdong Zhu, on behalf of himself and All others similarly situated.

Elizabeth Hopkins, Esq., [Argued], U.S. Department of Labor, Washington, DC, for Amicus Appellee Secretary of Labor.

Jay E. Sushelsky, Esq., American Association of Retired Persons, Washington, DC, for Amicus Appellee American Association of Retired Persons.

Agnieszka Fryszman, Esq., Cohen Milstein, Sellers & Toll, Washington, DC, for Amicus Appellee Pension Rights Center.

Before: RENDELL and AMBRO, Circuit Judges, and McVERRY,* District Judge.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Michele Wendel is a former employee of Schering–Plough who participated in the Schering–Plough Corporation Employees' Savings Plan, a defined contribution savings plan sponsored by Schering–Plough. Wendel and two other former Schering–Plough employees brought a class action

---

* Honorable Terrence F. McVerry, Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

against Schering–Plough and certain of its officers and directors under ERISA § 502(a)(2) arising out of the offering and management of the Plan. The two other plaintiffs were dismissed by stipulation in 2006 and Wendel is now the sole class representative. The District Court concluded that a release Wendel signed in connection with her separation from Schering–Plough violated ERISA and was therefore void. It then found the requirements of Rule 23 to be satisfied and certified a class consisting of Plan investors. On appeal, a host of issues relating to ERISA, Wendel's release, and class certification are before us. We will vacate the order certifying the class and remand for proceedings consistent with this opinion.

## I.

The Schering–Plough Corporation Employees' Savings Plan is an "individual account plan" under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §§ 1001–1461. The Plan allows participants to choose among a variety of investment funds, including the Schering–Plough Stock Fund, and to contribute as much as 50% of their pre-tax compensation to one or more of these funds. As the name suggests, the Schering–Plough Stock Fund is comprised primarily of shares of Schering–Plough common stock. It was one of fourteen funds

offered by the company as investment options for the employees' pension contribution. The value of Schering–Plough common stock declined during fiscal years 2001 and 2002, falling from a high of $60 per share to a low of below $20 per share in June 2003. Wendel alleges that this decline was the result of Schering–Plough's violations of Food and Drug Administration ("FDA") regulations, delays in FDA approval of new products, and Schering–Plough's participation in illegal kickback schemes.

Initially, three plaintiffs, Jingdong Zhu, Adrian Fields, and Michele Wendel, filed a class action under ERISA § 409(a)[1] asserting four claims of breach of fiduciary duty against numerous defendants[2] based on facts relating to this decline in value. Their complaint asserted claims on behalf of the Plan under ERISA § 502(a)(2)[3] and sought to restore losses sustained by the Plan as a result of defendants' breaches of their fiduciary obligations. Zhu and Fields are no longer parties.

On July 20, 2000, after ten years of employment with Schering–Plough, Wendel entered into a Separation Agreement that included an enhanced severance package (specifically, an additional severance payment of $13,943.60) in consideration for a general release and a covenant not to sue

---

1. Liability for a fiduciary's breach of duty is established by ERISA § 409(a), 29 U.S.C. § 1109(a), which provides: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from such breach."

2. The defendants are (1) Schering–Plough Corporation ("Schering–Plough"), as sponsor of the Plan; (2) Schering–Plough's former CEO, Richard J. Kogan, and individual members of the Schering–Plough Board's Pension

Committee (collectively, the "Director Defendants"); (3) Schering–Plough's Employee Benefits Committee and its members (collectively, the "Benefits Committee"); and (4) Schering–Plough's Employee Benefits Investment Committee and its members (collectively, the "Investment Committee").

3. Section 502(a)(2), 29 U.S.C. §§ 1132(a)(2), provides for civil enforcement of ERISA's fiduciary provisions "by a participant, beneficiary or fiduciary for appropriate relief under [ERISA § 409]."

the company.[4] Because Wendel is the sole remaining class representative, one of the central issues we must consider is what effect, if any, Wendel's release and covenant not to sue have on her ability to bring this action under ERISA § 502(a)(2) and to represent the class in accord with Rule 23.

Wendel pursues three claims stemming from defendants' alleged role in and knowledge of the alleged causes of the decline in the value of Schering–Plough stock, and from defendants' decision to continue to maintain the Plan's significant investment in Schering–Plough stock and to offer the Schering–Plough Stock Fund as an investment option despite this knowledge.[5] Wendel alleges that, since 1998, defendants knew or should have known that Schering–Plough stock was overvalued and an imprudent investment because of undisclosed problems with its FDA compliance systems and because of expected delays in rolling out its anticipated "blockbuster" drug, Clarinex. Wendel alleges that Schering–Plough disclosed these problems in a press release in 2001, immediately after which shares fell 15% in heavy trading and analysts dropped ratings and projected earnings for the company. She further alleges that defendants knew or should have known that Schering–Plough was engaged in illegal kickbacks and fraud against the Government, which ultimately resulted in substantial settlement payments by the company. Finally, Wendel alleges that the decline in the value of Schering–Plough common stock was a result of these problems, causing the Plan to suffer tens of millions of dollars in losses.

Wendel makes three breach-of-fiduciary-duty claims based on these facts. First, she alleges that defendants failed to prudently and loyally manage the Plan's assets. Second, Wendel alleges that Schering–Plough, the Director Defendants, and the Benefits Committee Defendants failed to adequately monitor and inform the appointed fiduciaries, the Investment Committee Defendants. Third, she alleges that defendants breached their fiduciary duty to avoid conflicts of interest, which prevented defendants from acting exclusively in the best interests of the Plan participants and beneficiaries.

Wendel moved for class certification pursuant to Fed.R.Civ.P. 23(a) and either 23(b)(1) or 23(b)(2). The proposed class included all participants and beneficiaries of the Plan since July 29, 1998. The District Court decided, as an initial matter, that the release executed by Wendel was void under ERISA § 410(a) because it relieved fiduciaries of their obligations. Therefore, the impact of her release on the class certification issue was not considered. The District Court concluded that class certification was appropriate for all three of the above claims under Rule 23(a) and

---

**4.** Wendel's Separation Agreement provides, in pertinent part:

> In exchange for the "enhanced" severance payment, I release the Company (which includes Schering–Plough, and all of its subsidiaries, affiliates, officers, directors, and employees) from all claims and liabilities which I have or may have against it as of the date on which I sign this Agreement.... Furthermore, I promise that I will not file a lawsuit against the Company in connection with any aspect of my employment or termination. I also waive the

> right to all remedies in any such action that may be brought on my behalf.

(Joint App. 331.)

**5.** The complaint asserted four counts. The District Court concluded that Rule 23 could not be satisfied as to one count that was based on the alleged failure to disclose information, because questions pertaining to individual reliance rendered a class action inappropriate as to that count. Wendel did not cross-appeal on this issue.

Rule 23(b)(1)(B).[6] The District Court defined the class as "[a]ll persons who were participants in or beneficiaries of the Schering–Plough Corporations Employees' Savings Plan at any time between July 29, 1998 to the present and whose accounts included investments in Schering stock." (Joint App. 35.) In so doing, the District Court adopted and incorporated the Report and Recommendation of Magistrate Judge Falk, in addition to offering its own opinion. (Joint App. 35.) Defendants petitioned for leave to appeal the class certification decision on an interlocutory basis pursuant to Fed.R.Civ.P. 23(f). We granted defendants' petition for an interlocutory appeal.[7]

## II.

As noted above, Wendel is now the sole representative of the class, and she signed a Separation Agreement with Schering–Plough that includes both a release and a covenant not to sue. As the existence of her release has been a focus of the parties' arguments, we first confront two preliminary issues regarding her release: (1) was the District Court correct in concluding that ERISA § 410(a) renders the release and the covenant not to sue void as against public policy, and thus of no force? As we answer this question in the negative, we will address an additional question: (2) do the release and covenant not to sue bar Wendel from being able to maintain an action under ERISA § 502(a)(2), as defendants urge?

### A. ERISA § 410(a)

■ ERISA § 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The District Court concluded that, in light of this provision, "the release and covenant not to sue at issue here do not extinguish Wendel's claims and have no bearing on the typicality inquiry." (JA 31.) In reaching this conclusion, the District Court relied on *Baker v. Kingsley*, No. 03–1750, 2007 WL 1597654, at *4 (N.D.Ill. May 31, 2007), where the district court stated that "ERISA itself prohibits parties from waiving claims for breaches of fiduciary duty," and used this as an alternative ground for rejecting a typicality challenge against plaintiffs who had signed releases.

■ We disagree with the District Court's application of § 410(a) to an individual release and covenant not to sue, because we conclude that § 410 applies only to instruments that purport to alter a fiduciary's statutory duties and responsibilities, whereas an individual release or covenant not to sue merely settles an individual dispute without altering a fiduciary's statutory duties and responsibilities. We agree with the view of the Eighth Circuit Court of Appeals in *Leavitt v. Northwestern Bell Telephone Co.*, 921 F.2d 160 (8th Cir.1990):

In our view, a release is not an 'agreement or instrument' within the meaning of section 1110(a). Section 1110(a) prohibits agreements that diminish the statutory obligations of a fiduciary. A release, however, does not relieve a fiduciary of any responsibility, obligation, or duty imposed by ERISA; instead, it merely settles a dispute that the fiducia-

---

6. Having so found, the District Court did not consider whether they satisfied Rule 23(b)(2).

7. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1337. We have jurisdiction under 28 U.S.C. § 1292(e) and Fed. R.Civ.P. 23(f).

ry did not fulfill its responsibility or duty on a given occasion. *Id.* at 161–62; *see also Boeckman v. A.G. Edwards, Inc.,* 461 F.Supp.2d 801, 808 (S.D.Ill.2006) (ERISA § 410(a) does not create a " blanket prohibition of the release of claims for breach of fiduciary duty").

■ *Baker* appears to be the only instance of a court's applying § 410(a) to invalidate an individual release. It is an unreported opinion in which this appears as mere dicta with no supporting reasoning. *Leavitt* and *Boeckman* are considerably more persuasive. We adopt their reasoning and read § 410(a) to extend only to contractual or other devices that purport to alter the statutory obligations of a fiduciary under ERISA, and not to reach a release of claims signed by an individual claiming the breach of a fiduciary duty. Otherwise, individuals could never amicably resolve litigation over these issues.

Accordingly, ERISA § 410(a) does not render Wendel's individual release and covenant not to sue void against public policy, and the effect of her release, therefore, must be considered.

## B. Wendel's Release as a Bar

■ Defendants contend that Wendel's release is a bar to the instant action. We disagree. Section 502(a)(2) claims are, by their nature, plan claims. *See, e.g., Graden v. Conexant Sys., Inc.,* 496 F.3d 291, 295 (3d Cir.2007). Wendel's complaint frames her causes of action in terms of claims brought "on behalf of" the Plan. Nowhere does she present the claims as anything but causes of action that belong to the Plan and are based on duties owed to the Plan. There is very little authority suggesting that an individual who has signed a release is barred from bringing claims under ERISA § 502(a)(2) on behalf of an ERISA plan. Indeed, there appears to be only one case to have so concluded. *See Howell v. Motorola, Inc.,* No. 03–5044, 2005 WL 2420410, at *4–6 (N.D.Ill. Sept.30, 2005) (valid release precludes § 502(a)(2) claim brought on behalf of a plan). The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2). *See Bowles v. Reade,* 198 F.3d 752, 759–62 (9th Cir.1999) (concluding that the plaintiff's § 502(a)(2) claims on behalf of the plans were unaffected by her release); *Johnson v. Couturier,* No. 05–2046, 2006 WL 2943160, at *2 (E.D.Cal. Oct.13, 2006) (release does not preclude § 502(a)(2) action); *In re JDS Uniphase Corp. ERISA Litig.,* No. 03–4743, 2006 WL 2597995, at *1 (N.D.Cal. Sept.11, 2006) ("The release ... do[es] not bar ERISA fiduciary duty claims brought by plan beneficiaries on behalf of the plan."). Indeed, a number of courts have held that, as a matter of law, an individual cannot release the plan's claims, and so for that reason an individual release cannot bar an individual from bringing a claim on behalf of an ERISA plan under ERISA § 502(a)(2). *See, e.g., In re Aquila ERISA Litig.,* 237 F.R.D. 202, 210 (W.D.Mo.2006) ("[T]he instant claims in this action are brought on behalf of the Plan pursuant to ERISA § 502(a)(2), not by ERISA plan participants seeking individual benefits. As a matter of law, a plan participant cannot release the Plan's claims."); *In re Williams Cos. ERISA Litig.,* 231 F.R.D. 416, 423 (N.D.Okla.2005) ("[T]he Court notes that the claims here are brought on behalf of the Plan, and a participant cannot release the Plan's claims, as a matter of law.") (citation omitted); *In re Polaroid ERISA Litig.,* 240 F.R.D. 65, 75 (S.D.N.Y. 2006) ("[N]umerous courts have held that under ERISA, individuals do not have the

authority to release a ... plan's right to recover for breaches of fiduciary duty.").

Defendants urge that the issue turns on whether the ERISA plan is a defined benefit plan or a defined contribution plan.[8] We disagree. Defined contribution ERISA plan claims are no different in this regard from defined benefit ERISA plan claims. In both cases, the ERISA § 502(a)(2) claim is brought on behalf of the plan. There is no reason that an individual's ability to bring a § 502(a)(2) claim would differ depending on whether the plan was a defined benefit plan or a defined contribution plan, and no authority that suggests that such a difference is or should be recognized.[9] Moreover, district courts have applied *Bowles* (which involved a defined benefit plan and found that an individual release did not bar an individual from bringing an ERISA § 502(a)(2) claim) to defined contribution plans. *See,*

*e.g., In re Aquila ERISA Litig.,* 237 F.R.D. 202, 210 (W.D.Mo.2006).

We conclude that Wendel's release does not bar her from bringing the § 502(a)(2) claim on behalf of the Plan. Accordingly, we will consider whether class certification of the claims, with Wendel as the sole proposed class representative, was appropriate under Rule 23.

## III.

■ Our review of a district court's grant of class certification is for "abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 312 (3d Cir.2008) (internal quotation omitted).

■ It is well established that "[a] class may be certified only if the court is

**8.** A defined benefit plan is a pension plan under which an employee receives a set monthly amount upon retirement for his or her life, with the benefit amount typically based upon the participant's wages and length of service. A defined contribution plan is a retirement plan whereby the employer, employee, or both make contributions to an individual's account during employment, but with no guaranteed retirement benefit, and with the ultimate benefit based exclusively upon the contributions to, and investment earnings of the plan. The benefit ceases when the account balance is depleted, regardless of the retiree's age or circumstances. *See* ERISA §§ 3(34)-(35), 29 U.S.C. § 1002(34)-(35); P. Schneider & B. Freedman, ERISA: A Comprehensive Guide § 3.02 (2d ed.2003).

**9.** Contrary to defendants' argument, the recent Supreme Court decision in *LaRue v. De-Wolff, Boberg & Associates, Inc.,* 552 U.S. 248, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008), does not suggest otherwise. *LaRue* involved a claim by a single participant in a defined contribution plan, asserting that the trustees breached their duties by failing to follow the participant's investment directions. The Fourth Circuit Court of Appeals had held that

the plaintiff could not bring a claim under § 502(a)(2) because the claim sought to protect the plaintiff's individual rights, rather than to protect the entire plan. *Id.* at 1023. The Supreme Court vacated the order, after concluding that § 502(a)(2) claims were available to redress fiduciary misconduct in defined contribution plans, even though the relief may be individualized. The Court stated that "whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms" redressible under § 502(a)(2). *Id.* at 1025. *LaRue* is of no help to defendants. First, it did not involve a class action, nor did it involve an individual who has signed a release or a covenant not to sue. Second, it broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a "plan," even if the ultimate relief may be individualized. Defendants' contention that *LaRue* establishes that there are no "plan claims" in the defined contribution context is incorrect.

'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Beck v. Maximus*, 457 F.3d 291, 297 (3d Cir.2006) (quoting *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). The requirements "set out in Rule 23 are not mere pleading rules." *Hydrogen Peroxide*, 552 F.3d at 316. Unless each requirement of Rule 23 is actually met, a class cannot be certified. *Id.* at 320. As a result, "[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* at 316. Accordingly, we have instructed district courts, where appropriate, to "'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" *Id.* at 316 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir.2001)).

Rule 23(a) sets out four "prerequisites" for an individual to be a class representative:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These four requirements are referred to, respectively, as "numerosity," "commonality," "typicality," and "adequacy."

If all of these requirements are met, "a class of one of three types (each with additional requirements) may be certified." *Hydrogen Peroxide*, 552 F.3d at 309. These three types are set out in Fed.

R.Civ.P. 23(b)(1)-(3). Here, Plaintiff sought certification under Rule 23(b)(1) and 23(b)(2), and the District Court certified the class under Rule 23(b)(1). Rule 23(b)(1) provides that a class action may be maintained if:

> prosecuting separate actions by or against individual class members would create a risk of ... adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1).

Because "each requirement of Rule 23 must be met, a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements." *Hydrogen Peroxide*, 552 F.3d at 320. Thus, in reviewing the District Court's decision to certify the class, we must assess whether an adequately "rigorous analysis" was conducted to determine that each of the Rule 23 requirements was satisfied. *Beck*, 457 F.3d at 297.

### A.

The first two Rule 23(a) prerequisites are plainly satisfied here. Numerosity, the prerequisite that the class be so numerous that joinder of all members is impracticable, is satisfied since ERISA § 502(a)(2) claims are brought on behalf of a Plan, and over 10,000 people were invested in the Schering–Plough Stock Fund as of December 31, 2000.

Commonality is also clearly satisfied. Commonality requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The

threshold for establishing commonality is straightforward: "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994).[10]

The requirement of commonality is satisfied here. The District Court, adopting the Report and Recommendation, correctly found that there were many questions of law or fact common to the named plaintiff and the class, including whether defendants were fiduciaries; whether defendants breached their duties to the Plan by failing to conduct an appropriate investigation into the continued investment in Schering–Plough stock; whether defendants breached their duties by continuing to invest in Schering–Plough stock and in continuing to offer the Schering–Plough Stock Fund; whether the defendants in supervisory roles failed in their monitoring of the Investment Committee Defendants; whether defendants failed to retain independent fiduciaries; and whether the Plan suffered losses as a result of defendants' breaches. These types of common questions are sufficient to meet the commonality requirement in ERISA cases. *See Williams,* 231 F.R.D. at 421 (finding commonality satisfied when common questions included whether defendants were fiduciaries and whether defendant breached their · fiduciary duties under ERISA); *Polaroid,* 240 F.R.D. at 74 (same); *In re Elec. Data Sys. Corp. ERISA Litig.,* 224 F.R.D. 613, 622 (E.D.Tex.2004) (same).

### B.

It is not as clear, however, that the other two Rule 23(a) prerequisites—typicality and adequacy—are satisfied.

### 1. Typicality

■ Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). All four Rule 23(a) prerequisites for class certification serve as "guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citations and internal quotation marks omitted). The typicality requirement furthers this aim by ensuring that the class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class. *See, e.g., Newton,* 259 F.3d at 182; *Beck,* 457 F.3d at 296; *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785, 796 (3d Cir.1995). Since one cannot assess whether an individual is sufficiently similar to the class as a whole without knowing something about both the individual and the class, courts must consider the attributes of the proposed representatives, the class as a whole, and the similarity between the proposed representatives and the class. This investigation properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent

---

**10.** It is well established that only one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural "questions" in the language of Rule 23(a)(2). *See, e.g., In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987); *Weiss v. York Hosp.,* 745 F.2d 786, 808–09 (3d Cir.1984).

to which the proposed representative may face significant unique or atypical defenses to her claims. *See, e.g., Newton,* 259 F.3d at 183–85; *Beck,* 457 F.3d at 295–97, 300–01.

■ The requirement that the *legal theory* and *legal claims* of the proposed representative must be typical of those of the class comes directly from the plain language of the Rule, which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The similarity between claims or defenses of the representative and those of the class does not have to be perfect. *Baby Neal,* 43 F.3d at 56; *Hassine v. Jeffes,* 846 F.2d 169, 177–78 (3d Cir.1988). We have previously said that the named plaintiffs' claims must merely be "typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck,* 457 F.3d at 295–96.

■ The requirement that the *individual factual circumstances* underlying the legal theory and legal claims of the representative must be sufficiently similar to those of the class stems from similar considerations. Ensuring that absent class members will be fairly protected requires the claims and defenses of the representative to be sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support. *See, e.g., E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403–04, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). However, factual differences between the proposed representative and other members of the class do not render the representative atypical "if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d

Cir.1992) (internal quotations omitted). Complete factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence. *Newton,* 259 F.3d at 182–85; *Hassine,* 846 F.2d at 176–77.

■ The requirement that the proposed representatives not be subject to *unique defenses* can be seen as an offshoot of the requirement that the representative have circumstances that are sufficiently similar to those of the class. It is well established that a proposed class representative is not "typical" under Rule 23(a)(3) if "the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck,* 457 F.3d at 301. We have explained the rationale behind this principle, noting that the "challenge presented by a defense unique to a class representative" is that "the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Beck,* 457 F.3d at 297. Other courts of appeals have emphasized this concern. *See, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990) ("[T]here is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (same); *J.H. Cohn & Co. v. Am. Appraisal Assocs.,* 628 F.2d 994, 999 (7th Cir.1980) ("[T]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class ... The fear is that the named plaintiff will become distracted by the presence of a possible

defense applicable only to him so that the representation of the rest of the class will suffer." (internal citations omitted)).

A common thread running through the various components of typicality—the requirements of similarity of legal claims, factual similarity, and absence of defenses unique to the representative—is the interest in ensuring that the class representative's interests and incentives will be generally aligned with those of the class as a whole. *See, e.g., Amchem,* 521 U.S. at 626 n. 20, 117 S.Ct. 2231 (noting that "the interests of the class members will be fairly and adequately protected" if the representative's claims are adequately interrelated); *Beck,* 457 F.3d at 295–96 (stating that the typicality requirement helps to ensure that "the incentives of the plaintiffs are aligned with those of the class"); *Stewart v. Abraham,* 275 F.3d 220, 227 (3d Cir.2001) ("The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members.").

■■■■ From the foregoing we glean the proper consideration in assessing typicality to include three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives

of the representative must be sufficiently aligned with those of the class.[11]

### 2. Wendel's Typicality

■■■■ Here, there is no doubt that as an individual bringing a claim under ERISA § 502(a)(2), Wendel satisfies the first of these conditions. Her legal claims, alleging several breaches of fiduciary duty, are identical to those of the class she seeks to represent. The basic factual circumstances supporting those claims—namely, defendants' conduct, Wendel's participation in the Plan, and her investment in Schering–Plough stock—are shared by the rest of the proposed class. Indeed, the class is defined so as to ensure this, requiring all class members to be "participants in or beneficiaries of the Schering–Plough Corporation Employees' Savings Plan at any time between July 29, 1998 to the present and whose accounts included investments in Schering stock."

It is not at all clear, however, that Wendel satisfies either of the other two conditions of typicality. First, as noted above, Wendel signed a Separation Agreement that included a general release and a covenant not to sue. As a result, she may be subject to unique defenses that could become a focus of the litigation, rendering her atypical and making class certification inappropriate. For instance, even if a release does not bar an individual from bringing an ERISA § 502(a)(2) claim on behalf of a plan, it could be argued that the covenant not to sue bars Wendel from filing a lawsuit and serving as a lead plaintiff in an action against Schering–Plough.

---

11. The Report and Recommendation noted that "[t]he proper focus of a typicality analysis is on defendants' conduct and plaintiff's legal theories," and suggested that in an ERISA § 502(a)(2) case, "class certification should be almost automatic." (Joint App. 13.) The nature of ERISA § 502(a)(2) claims does mean that commonality is quite likely to be satisfied, so that the first part of the typicality requirement—similarity of legal claims and the factual basis supporting those claims—will generally be satisfied. But, as this case demonstrates, that does not mean that class certification is automatic. The other aspects of typicality, as well as adequacy, must be considered.

Second, it could be argued that because of this release and covenant not to sue, Wendel's interests and incentives may not be sufficiently aligned with those of the class.[12] Given her release, Wendel may not have a monetary stake in the outcome. We do not decide these issues. As the District Court did not consider the release to be valid, it did not delve into these aspects of her representation of the class. It must do so on remand.

In addition, no conclusion as to Wendel's typicality can be reached without knowing more about the composition of the class and, in particular, whether other members of the class have signed releases and covenants not to sue. As noted above, the typicality requirement is meant to ensure that class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation. Currently, we know nothing about the other members of the class, and, specifically, we know nothing about how many of them have signed releases or covenants not to sue. Given the above concerns about Wendel's typicality, additional inquiry is required into the factual circumstances of the members of the class and whether her release and covenant not to sue render her atypical.

Here, we do not decide these issues but only require that the District Court conduct a more "rigorous analysis" into the effect of Wendel's release and covenant not to sue and the extent to which other members of the class have signed similar agreements.[13] As stressed above, a class may be certified only after a rigorous analysis has been conducted to determine whether the prerequisites of Rule 23 have been satisfied. As a result, "[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Hydrogen Peroxide*, 552 F.3d at 316.[14]

12. It is worth noting that we agree with the District Court that Wendel's deposition testimony does not preclude her from acting as a class representative for the Plan. As noted in the Report and Recommendation of the Magistrate Judge, the testimony that defendants allege demonstrates a clear conflict of interest is "subject to varying interpretations and does not reflect any clear conflict." (Joint App. 14.)

13. In this, our posture is similar to that of the Court of Appeals for the Fifth Circuit in *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 313 (5th Cir.2007). In *Langbecker*, a district court certified a class in which up to 9,000 potential class members in a § 502(a)(2) claim had signed broad releases. *Id.* at 313. A divided panel remanded the matter for further consideration of the effect of the releases on the certification decision. The court of appeals acknowledged that " § 502(a)(2) allows recovery that inures to the benefit of the plan as a remedy for breach of fiduciary duties." *Id.* The court also stated that the "enforceability of the releases presents difficult questions," and the "impact of

the releases should not have been excluded from the district court's certification analysis." *Id.* The Fifth Circuit was clear, however, that "we are not holding that the releases foreclose any § 502(a)(2) suit on behalf of the Plan or foreclose any class certification. We do stress, however, that the status of perhaps nine thousand claimants is not a trifle-either to the Appellants or the claimants themselves. The district court must consider the releases more thoroughly on remand." *Id.*

Our position is similar in that we agree that the release does not foreclose Wendel's § 502(a)(2) suit on behalf of the Plan, but we do see the release and covenant not to sue as relevant concerns for class certification and in particular for satisfying the typicality and adequacy requirements.

14. As we discuss more fully below, we disagree with the notion set forth in the Report and Recommendation that "[t]he Court must accept the substantive allegations of the complaint as true," citing *Chiang v. Veneman*, 385 F.3d 256, 262 (3d Cir.2004). (Joint App. 5.) As *Hydrogen Peroxide* makes clear, and as we

We note that there have been situations in which a class representative has been deemed atypical for having not signed a release when other members of the class have signed releases.[15] And there have been cases in which a class was certified despite there being either (1) class representatives without releases representing a class that included people with releases; [16] or (2) "mixed" class representatives (some but not all of whom signed releases), representing a "mixed" class (some who had signed releases, some who had not).[17] We have not found a single case in which a class was certified where the only proposed representative signed a release and a covenant not to sue and then attempted to represent a class consisting primarily of members who had not signed releases or covenants not to sue.

### 3. Adequacy

The final Rule 23(a) class certification prerequisite, Rule 23(a)(4), requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The

---

note below, *Chiang* is mistaken on this point. *Hydrogen Peroxide*, 552 F.3d at 318 n. 18. Additionally, the Report and Recommendation invokes *Eisenberg v. Gagnon* for the proposition that "[u]ltimately, doubts are resolved in favor of class certification." (Joint App. 6) (citing *Eisenberg*, 766 F.2d 770, 785 (3d Cir. 1985), *cert. denied*, 106 S.Ct. 342, 343 (1985)). Our decision in *Hydrogen Peroxide* makes clear that *Eisenberg* should not be read in this manner:

> Although the trial court has discretion to grant or deny class certification, the court should not suppress "doubt" as to whether a Rule 23 requirement is met—no matter the area of substantive law. Accordingly, *Eisenberg* should not be understood to encourage certification in the face of doubt as to whether a Rule 23 requirement has been met. *Eisenberg* predates the recent amendments to Rule 23 which, as noted, reject tentative decisions on certification and encourage development of a record sufficient for informed analysis.

*Hydrogen Peroxide*, 552 F.3d at 321.

15. In *Melong*, class certification was denied because the representatives, who had not signed releases, were found atypical and inadequate as representatives of a class that included people who had signed releases. *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10 (D.C.Cir.1980). In that case, 7200 of 7500 members of the class had signed releases, making it only a very small minority of class members who were in the same situation as the proposed representatives.

16. There are a number of cases in which a class was certified in the context of a ERISA § 502(a)(2) claim being brought for breach of fiduciary duties in managing a defined contribution plan, despite the fact that the class representatives had not signed releases whereas some members of the proposed class had signed releases. *See, e.g., George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338 (N.D.Ill. 2008); *Williams*, 231 F.R.D. 416. In the latter case, a class was certified, but the district court required the plaintiffs to provide a class member to represent those with releases in order to satisfy typicality and to address any potential standing worries. *Id.* at 423–24. In limited contrast, in *Langbecker*, the Fifth Circuit vacated a class certification order in a similar ERISA § 502(a)(2) claim partially on the ground that the class representatives had *not* signed releases whereas 9000 of the 85,-000 proposed class members had signed releases, and the district court excluded consideration of the releases from its certification analysis. *Langbecker*, 476 F.3d at 313–15. However, the Fifth Circuit did not find that the class representatives were atypical because of the releases—only that this should have been considered by the district court.

17. There are cases in which a "mixed" set of class representatives (including people who had signed releases and people who had not) was deemed typical and adequate to represent a "mixed" class. *See, e.g., In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D.Mo.2006). In that case, the district court said that the issue of releases should be addressed later, noting that the parties were free "to litigate that issue [the releases] and request decertification of class members who signed the releases" at a later point if necessary. *Id.* at 210–11.

adequacy inquiry "has two components designed to ensure that absentees' interests are fully pursued." *See Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 630 (3d Cir.1996), *aff'd, Amchem,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689. First, the adequacy inquiry "tests the qualifications of the counsel to represent the class." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 532 (3d Cir.2004) (internal citations omitted). No issue has been raised regarding the adequacy of Wendel's counsel for purposes of representing the class.

The second component of the adequacy inquiry seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts of interest. "Because of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both." *Beck,* 457 F.3d at 296.

For this reason, many of the same questions regarding Wendel's typicality also raise issues as to her adequacy. For example, if some or most members of the class do not have releases or covenants not to sue, then Wendel may be subject to a unique defense. If Wendel's release is held to bar her recovery in the form of individualized augmented benefits, she may lack the same financial stake as the other members of the class. Also, Wendel may have different incentives in terms of how much time, energy, and money she is willing to spend pursuing the claim. *See, e.g., In re Bell S. Corp. ERISA Litig.,* No. 02–CV–2440, 2005 U.S. Dist. LEXIS 46823 (N.D.Ga. Sept. 30, 2005) (finding named plaintiffs inadequate class representatives because of, among other reasons, signed releases: "the Named Plaintiffs who signed such releases clearly cannot bring claims on behalf of the class with the same vigor and interest as someone who had not signed such releases"). Therefore, for the reasons articulated above, the District Court must give further consideration to the interests of the members of the class, and the impact of the release and covenant not to sue, as bearing on Wendel's ability to be an adequate class representative.

### C.

■■■ Defendants also challenge the temporal scope of the class, contending that the District Court erred in granting an open-ended class period that extends from July 29, 1998 to the "present," [18] and in concluding that it was bound to credit Wendel's assertion that defendants continue to act imprudently with regard to Schering–Plough stock. They urge that, under the proper standard in this Circuit, the District Court had a duty to go behind the pleadings to determine the appropriate class period. We agree. This issue is dispositive, and so we do not reach defendants' other arguments regarding the open-ended class period.

In the Report and Recommendation, the Magistrate Judge correctly noted that Wendel alleged in her complaint that Schering–Plough stock is an imprudent in-

---

**18.** On September 30, 2008, the District Court ordered the following class to be certified: All persons who were participants in or beneficiaries of the Schering–Plough Corporation Employees' Savings Plan at any time between July 29, 1998 to the present and whose accounts included investments in Schering stock[.]
(Joint App. 35.)

vestment up to the present.[19] (Joint App. 23.) He also cited decisions of other district courts [20] demonstrating that the correct class period in an ERISA prudence claim extends to the date at which the stock ceased to be an imprudent investment, and reasoned that, since discovery had not yet commenced, he would accept the class period as alleged, "subject to potential future modification." (Joint App. 23–24.) The District Court adopted the Report and Recommendation, and cited *Chiang,* 385 F.3d at 262, for the proposition that it was "constrained to accept the substantive allegations of the complaint as true," in the absence of evidence that the investment was imprudent by 2001. (Joint App. 33.) In *Chiang,* we rejected arguments raised by a defendant that a certified class definition was "overbroad," reasoning that because certain issues affecting class definition went to the merits of the case, they could not appropriately be resolved at the class certification stage. 385 F.3d at 269–70.

*Chiang* misstated the law on this point, and has been disavowed in more recent decisions. In *Hydrogen Peroxide,* we explained:

> *Chiang v. Veneman,* 385 F.3d 256, 262 (3d Cir.2004), decided after *Newton* and *Johnston,* cited *Eisen* for the proposition that "in determining whether a class will be certified, the substantive allegations of the complaint must be taken as true." No supporting analysis of Rule 23 jurisprudence accompanied this statement, which contradicts and conflicts with *Newton, Johnston,* and *Szabo* (which we relied upon in *Newton* ). "To

the extent that the decision of a later panel conflicts with existing circuit precedent, we are bound by the earlier, not the later, decision." *United States v. Monaco,* 23 F.3d 793, 803 (3d Cir.1994). 552 F.3d at 318 n. 18.

In *Hydrogen Peroxide* we stressed that the decision to certify and define a class requires a "rigorous analysis" that "may include a preliminary inquiry into the merits." *Id.* at 318 (internal quotation marks omitted). The District Court's acceptance of Wendel's allegations without such inquiry in reliance on *Chiang,* and its resulting certification of an open-ended class period, constituted an abuse of its discretion. The District Court should reconsider the class period on remand under the correct legal standard, which may require the District Court to engage in preliminary factual inquiries on the merits in order to resolve questions pertaining to the appropriate end date. We note, however, that nothing in *Hydrogen Peroxide* should be read to preclude an open-ended class period, as long as the period results from a proper application of law.

### D.

▮ Defendants' last argument is that Rule 23(b)(1)(B) class certification was inappropriate here because they may assert a statutory defense under ERISA § 404(c), and the applicability of that defense must be determined on a case-by-case basis. Section 404(c) provides a defense to a breach of fiduciary duty claim if the loss caused by the breach resulted from a participant's exercise of control.[21]

---

**19.** The complaint was filed on March 30, 2006. (Joint App. 124.)

**20.** *E.g., Lively v. Dynegy, Inc.,* No. 05–00063, 2007 WL 685861 at *6 (S.D.Ill. Mar.2, 2007) ("Accordingly, the proper termination date of the proposed class period is the date when

Dynegy stock ceased to be, as Plaintiffs allege, an imprudent investment for the Plan.").

**21.** ERISA § 404(c) provides in pertinent part that:

> In the case of a pension plan which provides for individual accounts and permits a

Defendants argue that a "judicial determination applying the § 404(c) defense against one plan participant would not be dispositive of whether the defense applies against any other participant." Appellants' Br. 41. Thus, the § 404(c) defense raises "individualized issues regarding each participant's decision to invest in the Stock Fund," and defendants contend that "[b]ecause the resolution of these questions for any one participant will not be determinative of the claims of any other participant, certification of a Rule 23(b)(1)(B) class was inappropriate." *Id.* at 50.

The problem with this argument is that it confuses the requirements for certification of a Rule 23(b)(1) class with the requirements for class certification under Rule 23(b)(3). Under Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). This gives rise to the requirements of predominance and superiority.

Under the District Court's Rule 23(b)(1)(B) class certification, however, there is no predominance or superiority requirement. Rather, a class should be certified under Rule 23(b)(1)(B) when "prosecuting separate actions by or against individual class members would create a risk of ... adjudications with respect to individual class members that, as a practical matter, would be dispositive

of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R.Civ.P. 23(b)(1)(B). This is clearly the case here, where Wendel's proofs regarding defendants' conduct will, as a practical matter, significantly impact the claims of other Plan participants and of employees who invested in the Stock Fund. Wendel's claims are based on defendants' conduct, not, as defendants urge, on unique facts and individual relationships.

In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.[22] *See, e.g., Kolar v. Rite Aid Corp.,* No. 01–CV–1229, 2003 WL 1257272, at \*3 (E.D.Pa. Mar. 11, 2003); *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 467 (E.D.Pa.2000); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 453 (S.D.N.Y.2004); *Jones v. NovaStar Fin., Inc.,* 257 F.R.D. 181, 2009 WL 943563 at \*12 (W.D.Mo.2009). Given this, it is simply not relevant to the Rule 23(b)(1)(B) inquiry that "the attempt to establish a § 404(c) defense will invariably" present individual issues, as defendants argue. Appellants' Br. 41. What is relevant here is that the *plaintiff's claims* about defendants' conduct are sufficiently similar to those of the proposed class and are not based on "unique facts" and "individual relationships with the defendants." Given that it is an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleging

participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account ... no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such partic-

ipant's or beneficiary's exercise of control. . . .

29 U.S.C. § 1104(c)(1)(A).

**22.** For reasons articulated in footnote 9 above, the Supreme Court's recent decision in *LaRue* does not suggest otherwise.

breaches of fiduciary duty on the part of defendants that will, if true, be the same with respect to every class member, Rule 23(b)(1)(B) is clearly satisfied, and the § 404(c) defense is not relevant.

Therefore, we need not consider the § 404(c) issue at this juncture. In so concluding, we do not mean to imply that the § 404(c) defense would necessarily be problematic under Rule 23(b)(3), or that it necessarily applies with respect to Wendel or more generally in ERISA cases of this sort.[23]

## IV.

For the foregoing reasons, we will VACATE the class certification order and REMAND for proceedings consistent with this Opinion.

---

23. Wendel contends that under Department of Labor regulations, § 404(c) does not provide a defense to the fiduciary duty claims she is asserting. See 57 Fed.Reg. 46906, 46922 (Oct. 13, 1992) ("The Department emphasizes, however, that the act of designating investment alternatives ... in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable."). We need not reach these issues and do not decide them.